PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JONATHAN LEIGH HENSLEE,
        *Plaintiff-Appellant,*

     v.

ALVIN KELLER, JR.; KEITH
WHITENER,
        *Defendants-Appellees.*

No. 11-6707

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Robert J. Conrad, Jr., Chief District Judge.
(5:11-cv-00050-RJC)

Argued: March 22, 2012

Decided: June 5, 2012

Before MOTZ, KING, and GREGORY, Circuit Judges.

Motion granted by published opinion. Judge Gregory wrote the opinion, in which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** George C. Chipev, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Joseph Finarelli, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON**

**BRIEF:** Steven H. Goldblatt, Director, Doug Keller, Supervising Attorney, Nilam Sanghvi, Supervising Attorney, Marion M. Read, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.

## OPINION

GREGORY, Circuit Judge:

Jonathan Leigh Henslee, an inmate currently incarcerated in the North Carolina Department of Correction at Alexander Correctional Institute ("AXCI"), appeals the district court's dismissal of his complaint for failure to state a claim on which relief can be granted. Henslee moved to proceed *in forma pauperis* ("IFP") on appeal, despite the fact that the district court's dismissal of the underlying claim was Henslee's third dismissal for failure to state a claim. Because counting the district court's dismissal as a third strike under 28 U.S.C. § 1915(g) (2006) would effectively insulate the dismissal from appellate review, we grant Henslee's motion to proceed IFP on appeal.

I.

On January 17, 2011, Henslee filed an inmate grievance with the North Carolina Department of Correction stating that AXCI's failure to enforce its grooming policy[1] puts inmates at risk of contracting various infections.[2] On April 7, 2011,

---

[1] AXCI does not allow inmates to possess personal disposable razors. Instead, electric razors are available for purchase for around twenty dollars. For indigent inmates, inmate barbers provide shaves upon request. AXCI's grooming policy requires that each inmate barber have three interchangeable razor heads at all times; one razor head is disinfected while the second is in use, and the two heads are switched between each shave; the third razor head is kept as a backup.

[2] Henslee appears to assert a violation of his Eighth Amendment rights. He specifically alleges that inmate barbers do not follow the AXCI groom-

after the grievance was closed without action, Henslee filed a complaint against Alvin Keller, secretary of the North Carolina Department of Correction, and Keith Whitener, superintendant at AXCI, ("Appellees") seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 (2006) and 28 U.S.C. § 1983 (2006). Along with his complaint, Henslee also moved to proceed IFP and submitted the required documentation in support of his motion.

On May 10, 2011, the district court conducted a preliminary review of Henslee's complaint pursuant to the Prison Litigation Reform Act (the "PLRA"), 28 U.S.C. § 1915A (2006), and dismissed the complaint for failure to state a claim.[3] *Henslee v. Keller*, No. 5:11-cv-00050-RJC (W.D.N.C. May 10, 2011) (unpublished). In its order, the district court noted that two of Henslee's previous complaints were dismissed for failure to state a claim[4] and that its dismissal of this complaint constituted a third strike for the purposes of 28 U.S.C. § 1915(g). *Id.* at *4 n.2. On June 8, 2011, the district court

---

ing policy (failing to disinfect razor heads between uses, smearing saliva on a razor before use, wiping his "backside" with a razor before use, and refusing requests to clean the razor prior to use) and that prison officials are aware of the violations but do not supervise the inmate barbers' activities.

[3]The district court cited to a case, affirmed by an unpublished per curiam opinion, finding that failure to properly sanitize razors did not amount to an Eighth Amendment violation. *DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 331 (E.D. Va. 2000), *aff'd*, 13 F. App'x 96 (4th Cir. 2001) (per curiam). The district court also noted that the grooming policy did not require inmates to receive a shave. Finally, the district court concluded that Henslee failed to state a claim because the grooming policy itself met all public health-safety requirements and, therefore, deliberate indifference was not established.

[4]*Henslee v. Todd*, No. 1:09-cv-00432 (W.D.N.C. Dec. 15, 2009) (unpublished), and *Henslee v. Turner*, No. 1:04-cv-00151 (W.D.N.C. Aug. 19, 2004) (unpublished), were each dismissed by the district court for failure to state a claim.

retroactively granted Henslee's motion to proceed IFP at the district-court level.

On May 27, 2011, Henslee timely filed a notice of appeal of the district court's dismissal. This Court issued a PLRA Notice for Appeals to Henslee, and Henslee timely returned the full application to proceed IFP on appeal. Because Henslee's application for IFP status on appeal raises an issue not previously considered by this Court, we assigned counsel to Henslee and directed briefing on whether an order dismissing a complaint as frivolous or malicious, or for failure to state a claim counts as a strike if an appeal of that order is pending or the time for filing an appeal has not expired.

## II.

The PLRA provides that prisoners may qualify for IFP status to bring civil actions challenging the circumstances of their incarceration. 28 U.S.C. § 1915 (2006). In 1996, Congress amended the statute to address an increase in frivolous prisoner lawsuits and imposed a "three strikes" rule. Today, the PLRA precludes prisoners from bringing an action or appeal IFP "if the prisoner has, on 3 or more prior occasions . . . brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."[5] 28 U.S.C. § 1915(g).

Although this Court has recently addressed what constitutes a strike, *Tolbert v. Stevenson*, 635 F.3d 646, 651 (4th Cir. 2011); *McLean v. United States*, 566 F.3d 391, 396-97 (4th Cir. 2009), we have not addressed under what circumstances a district court's dismissal acts as a third strike, precluding IFP status on appeal of the underlying dismissal. More gener-

---

[5]Section 1915(g) makes an exception for prisoners "under imminent danger of serious physical injury," but Henslee does not allege that this exception applies to him.

ally, the Court has not yet addressed when a dismissal may be counted for the purposes of the "three strikes" rule.

The other circuits that have addressed this issue are split as to whether dismissal counts as a strike, and therefore precludes IFP status, when the time for appeal has not expired or appeal is pending.

## A.

No fewer than seven circuits have adopted the majority view. The Fifth, Eighth, Ninth, Tenth, and D.C. Circuits have found that the dismissal of a prisoner's civil action as frivolous, malicious, or for failure to state a claim does not count as a strike for the purpose of § 1915(g) until the litigant has exhausted or waived his appeals. *Silva v. Di Vittorio*, 358 F.3d 1090, 1098-99 (9th Cir. 2011); *Thompson v. DEA*, 492 F.3d 428, 432 (D.C. Cir. 2007); *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 953 (8th Cir. 2006); *Jennings v. Natrona County Detention Ctr. Med. Facility*, 175 F.3d 775 (10th Cir. 1999); *Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996). In unpublished opinions, the First and Third Circuits have also adopted the majority rule, although without any explanation. *Nicholas v. Corbett*, 254 Fed. Appx. 117 (3d Cir. 2007) (per curiam) (unpublished); *Michaud v. City of Rochester*, 2000 WL 1886289, *2 n.1 (1st Cir. Dec. 27, 2000) (per curiam) (unpublished). The Second Circuit, while explicitly reserving the issue, has indicated that the majority rule is presumptively correct. *See Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010).

The circuits to adopt the majority rule have grounded their holdings on finding specific terms in § 1915(g) to be ambiguous. Although most clearly expressed by the Fifth Circuit in *Adepegba*, these courts have found the term "dismissal" to be ambiguous and have interpreted it as necessarily including the limitation of finality. The *Adepegba* court explained that it viewed the statute as ambiguous because Congress provided

no guidance as to "exactly what counts as a dismissal" under § 1915(g). 103 F.3d at 387. Because the plain intent of Congress in drafting § 1915(g) was to penalize truly frivolous litigation, rather than to "freeze out meritorious claims or ossify district court errors," they construed "dismissals" as including only those for which appeal has been exhausted or waived. *Id.* at 388. In *Jennings*, the Tenth Circuit adopted the Fifth Circuit's reasoning, noting the same concerns. 175 F.3d at 780. The D.C. Circuit addressed this issue in *Thompson*, where both parties conceded that a dismissal did not count as a strike under § 1915(g) until its appeal had been exhausted. 492 F.3d at 432. The court found the requirement that a dismissal be final was "fairly implied" by the statute, and based its reasoning on a concern that immediately counting dismissals as strikes would effectively eliminate the appellate function — a result Congress likely would not have intended absent an explicit indication. *Id.* Similarly, the Ninth Circuit adopted the majority rule, noting that an opposite holding would be a departure from the normal practice, which under the Federal Rules of Civil Procedure, generally grants an appeal as of right from all final district court decisions. *Silva*, 658 F.3d at 1099–98; *see* 28 U.S.C. § 1291 (2006).

## B.

The Seventh Circuit is the only appellate court to have held that a district court dismissal may serve to deny IFP status on an appeal of the underlying dismissal.[6] *See Robinson v. Powell*, 297 F.3d 540, 541 (7th Cir. 2002). The court held that the language of § 1915(g) unambiguously requires denial of IFP status for any and all actions or appeals filed after a prisoner received three dismissals. *Id.* However, the court noted the legitimate concern that prisoners may be effectively denied appellate review of the correctness of the decision that

---

[6]A district court in the Sixth Circuit has adopted the *Robinson* court's reasoning. *See Lacefield v. WREG-Tv, Inc.*, 2006 WL 889419 (W.D. Tenn. Mar. 30, 2006).

resulted in their third strike. *Id.* To address this issue, the court noted that if a prisoner with three strikes filed a motion to proceed IFP on an appeal of the underlying dismissal,[7] the court could determine if the district court "might have erred in dismissing" the complaint and, if so, overrule the third strike and grant IFP status.[8] *Id.*

### III.

Our analysis must begin with the plain language of the statute. *Tolbert v. Stevenson*, 635 F.3d 646, 650 (4th Cir. 2011) (*citing Green v. Young*, 454 F.3d 405, 408 (4th Cir. 2006)). We consider the language of the statute, the context in which the language is used, and the statute as a whole. *Green*, 454 F.3d at 408. If the statutory scheme is "coherent and consistent" and the language unambiguous, we will look no further. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (*quoting United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). However, if any of the statute's terms are subject to more than one reasonable interpretation, the language is ambiguous, and the Court looks beyond the statute's terms to determine Congress's intent in enacting the law. *See id.* at 345.

### A.

Turning to the language of the statute, we find that the term "prior occasions" in § 1915(g), which Congress did not define, may have multiple reasonable interpretations, and therefore creates ambiguity in the statute. Indeed, appellees concede that Congress did not define "prior occasions." Sec-

---

[7]Such a motion would be brought under Federal Rule of Appellate Procedure 24(a)(5).

[8]The availability of this procedure may be limited by the 2002 amendment to Federal Rule of Appellate Procedure 24, which added language that makes the rule consistent with, and subject to, the requirements of the PLRA. Fed. R. App. Proc. 24(a)(3)(B) (2002).

tion 1915(g) does not limit or otherwise define the duration of an occasion, so it may refer to a single moment or to a continuing event: to an appeal, independent of the underlying action, or to the continuing claim, inclusive of both the action and its appeal. Because the word "occasions" is ambiguous, we reject the Seventh Circuit's interpretation of § 1915(g).[9]

### B.

Having determined that "occasions" is subject to multiple interpretations, we must look to the statute's "legislative history, prior interpretations, related statutes, and the underlying congressional purpose and public policy considerations" to ascertain its purpose. *United States v. Jackson*, 759 F.2d 342, 344 (4th Cir. 1985).

The legislative history of § 1915(g) indicates that Congress's intention was to limit frivolous prisoner litigation without preventing meritorious claims from being heard. *See* 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl) (stating that frivolous suits were "draining precious judicial resources" and that the act would "free up judicial resources for claims with merit by both prisoners and nonprisoners"). Congress intended to strike a balance between providing unimpeded access to federal courts and preserving judicial resources.

Many of the circuits adopting the majority rule have also cited to the policy concern that a "hyper-literal" reading of § 1915(g) will "freeze out meritorious claims or ossify district court errors" by effectively preventing the appellate courts from performing their function. *Adepegba*, 103 F.3d at 388;

---

[9]We also note that even the Seventh Circuit was unwilling to leave unrestricted the draconian effect of a strictly construed "three strikes" rule. We agree that a holding contrary to the one we reach today would be unreasonably severe in light of congressional intent to foster meritorious prisoner lawsuits.

*see also Thompson*, 492 F.3d at 433. In enacting § 1915(g), Congress never indicated that it intended to alter the rule of 28 U.S.C. § 1291, which allows appeals as of right for nearly all civil actions. In the subset of cases in which a third strike dismissal is appealed, counting the underlying dismissal as a strike would "effectively eliminate our appellate function." *Id.* at 432. We agree with the *Thompson* court that Congress would have explicitly indicated any intent to limit the general rule allowing appeal as of right. It would therefore be improper to interpret "occasions," and § 1915(g) generally, to limit the Court's appellate function in a defined class of cases.[10]

With these considerations in mind, we must decide what Congress intended the term "occasions" to encompass and, therefore, what qualifies as a "prior occasion[]" on which a dismissal may count as a strike under § 1915(g). The interpretation of "occasions" which adheres most closely to Congress's dual intentions is one that includes both the appeal and its underlying action. We hold, therefore, that a "prior occasion[]" under § 1915(g) cannot include the dismissal of the underlying claim, and such a dismissal cannot act as a strike to preclude IFP status on its own appeal. *See Pigg v. F.B.I.*, 106 F.3d 1497, 1498 (10th Cir. 1997) (holding district court dismissal of "plaintiff's present action" did not constitute "prior action[]" and thus did not count as third strike). In practice, our interpretation preserves the Court's appellate function and allows review, and potentially reversal, of improper district court dismissals. Consistent with the statute's purpose, our reading also ensures that § 1915(g) will effectively dis-

---

[10]It should be noted, however, that under any construction of § 1915(g), there is a possibility that a litigant will be precluded from obtaining IFP status on appeal of the underlying action. Whether a dismissal acts as third strike immediately or only once final, it could preclude IFP status for the appeal of an intervening, meritorious claim that was erroneously dismissed, but which had not yet been appealed.

suade prisoner litigants from filing frivolous or malicious claims without unduly hindering meritorious ones.[11]

## IV.

For the reasons previously given, we grant Henslee's motion to proceed *in forma pauperis* for the purposes of this appeal. A district court dismissal may not act as a third strike, precluding a prisoner litigant from proceeding *in forma pauperis*, on an appeal of the underlying dismissal.

*MOTION GRANTED*

---

[11]Because our interpretation of the term "prior occasion" resolves this case, we need not reach Henslee's alternative argument that, like most of our sister circuits to address the question, we should read a requirement of finality into the term "dismissal."